## UNITED STATES DISTRICT COURT
### DISTRICT OF OREGON – PORTLAND DIVISION

**Teresa Gillette**,

               Plaintiff,

v.

**State of Oregon**,

**Oregon Department of Corrections**,

**Colette Peters,** Director of Oregon Department of Corrections, in her official capacity,

**Lisa M. Arrington**, individually,

**Janet Ridgley,** individually,

**Nicole Carr**, individually,

**Brittney Aldrich**, individually,

**Sara Rossi**, individually,

**Angelina Dickson**, individually,

**Christine Pries**, individually,

**John and Jane Does 1-5**, individually,

               Defendants.

Case No:

**COMPLAINT**
**(JURY TRIAL DEMANDED)**

Plaintiff Teresa Gillette through her attorney, Christopher J. Kuhlman, 160 NW Irving Ave., Suite 203, Bend, Oregon, alleges the following for her causes of action against the Defendants:

## INTRODUCTION

At age fifty-seven (57), Plaintiff, Teresa Gillette, went to prison for the first time in her life. In addition to being much older than most of the other inmates, Ms. Gillette suffered from multiple sclerosis and was close to deaf in both ears. Despite dozens of requests for functioning hearing aids, Ms. Gillette never received them. As a result, Ms. Gillette had to navigate the predatory prison environment with almost no ability to hear, causing her to be punished for noncompliance with prison guard commands, miss her medications, miss meals, and miss calls for laundry resulting in her having to wear filthy clothes and sleep in filthy bedding.

Above all, not being able to hear caused her immense anxiety as she was constantly worried that due to her lack of hearing a fellow inmate or a prison official would sneak up on her and attack or sexually assault her.

## PARTIES

1.     Plaintiff Teresa Gillette is citizen of the United States and was at all times relevant to this action, a resident of Oregon. Ms. Gillette served her time at Coffee Creek Correctional Facility in Wilsonville, Oregon from approximately September 29, 2017 until September 18, 2018. Ms. Gillette has been released from prison and is no longer in custody.

2

2.      Defendant State of Oregon is being sued for violations of Title II of the ADA and Section 504 of the Rehabilitation Act and the actions of its employees, agents, and contractors who violated these laws.

3.      Defendant Oregon Department of Corrections is an agency of the State of Oregon and runs and manages the 14 state prisons in the state including Coffee Creek Correctional facility.

4.      Defendant Colette Peters is the Director of the Oregon Department of Corrections and as such runs, manages, and oversees all of the state prisons including Coffee Creek Correctional facility.  The Oregon Department of Corrections official website states that Ms. Peters has "ultimate oversight of an agency with 4,700 employees; a biennial budget of $ 2 billion; and responsibility for managing 14,700 incarcerated adults in 14 prisons across the state."  Ms. Peters biography on the official government website also states that she developed the "Oregon Way" of running prisons which transforms "environments inside correctional facilities to be more normal and humane."

5.      Upon information and belief, the Oregon Department of Corrections employed the individual Defendants at all times relevant herein and was responsible for the hiring, training, retention, and oversight of all of its employees, contractors, and agents who interacted and were negligent and deliberately indifferent to Plaintiff's needs.

6.      Defendant Lisa M. Arrington is the Disabilities Accommodation facilitator at Coffee Creek Correctional Facility.  At all times relevant, Ms. Arrington was duly appointed and acting under color of law and is being sued in her individual capacity.

7.     Defendant Janet Ridgley is a Nurse Practitioner at the Coffee Creek Correctional Facility when she provided medical care to Ms. Gillette during her incarceration.  At all times relevant, Ms. Ridgley was duly appointed and acting under color of law is being sued in her individual capacity.

8.     Defendant Brittney Aldrich is a Registered Nurse at the Coffee Creek Correctional Facility and provided medical care to Ms. Gillette during her incarceration. At all times relevant, Ms. Aldrich was duly appointed and acting under color of law is being sued in her individual capacity.

9.     Defendant Sara Rossi is a Registered Nurse at the Coffee Creek Correctional Facility and provided medical care to Ms. Gillette during her incarceration.  At all times relevant, Ms. Rossi was duly appointed and acting under color of law is being sued in her individual capacity.

10.     Defendant Angelina Dickson is a Registered Nurse at the Coffee Creek Correctional Facility and provided medical care to Ms. Gillette during her incarceration. At all times relevant, Ms. Dickson was duly appointed and acting under color of law is being sued in her individual capacity.

11.     Defendant Christina Pries is a Registered Nurse at the Coffee Creek Correctional Facility and provided medical care to Ms. Gillette during her incarceration. At all times relevant, Ms. Pries was duly appointed and acting under color of law is being sued in her individual capacity.

12.     Defendants John/Jane Does 1-5 are currently unknown employees, contractors, administrators, and/or health care providers under the control, agency, employ

4

of the Oregon Department of Corrections who provided medical care to Ms. Gillette during her incarceration at Coffee Creek Correctional Facility or who received reports from her regarding her need for hearing aids, medical care, and humane treatment and were deliberately indifferent or negligent to her requests.   At all times relevant, John/Jane Does were duly appointed and acting under color of law and are being sued in their individual capacity.

## JURISDICTION & VENUE

13.    Plaintiffs' claims are based, in part, on Title 42 U.S.C. § 1983, 121101, *et seq.,* and § 504 of the Rehabilitation Act and the Eighth and Fourteenth Amendments of the U.S. Constitution.   This Court, therefore, has federal question subject matter jurisdiction pursuant to Title 28 U.S.C. §§ 1331 and 1343.

14.    Venue in this Court is appropriate pursuant to Title 28 U.S.C. § 1391. Further, the unlawful practices alleged herein occurred within this State and District.

## FACTUAL ALLEGATIONS

15.    Ms. Gillette suffers from Multiple Sclerosis and also suffered extensive hearing loss and a traumatic brain injury from a motor vehicle accident with a drunk driver that occurred on or about October of 1986.  Ms. Gillette also suffered very significant hearing loss in both her left and right ear as a result of the collision and has since been dependent on hearing aids to be able to communicate.

5

16.    In December of 2016, Ms. Gillette discovered that her romantic partner of over thirty-five (35) years was having an affair.  Ms. Gillette was devastated upon learning of the affair and on December 10th, drank to intoxication and rammed her motor vehicle into her former romantic partner's parked Jeep.

17.    No one was in the Jeep when Ms. Gillette hit it with her motor vehicle and Ms. Gillette was also the owner of the Jeep so she was effectively destroying her own property.

18.    Ms. Gillette was physically arrested during the incident and, during the arrest, both of her hearing aids were dislodged and lost in the snow.

19.    Ms. Gillette accepted responsibility for her actions and pled guilty to Assault in the Fourth Degree and other related charges and was sentenced to over a year in prison.

20.    She was fifty-seven (57) years-old at the time of her sentence and in weakened physical condition due to her Multiple Sclerosis.  Prior to this, Ms. Gillette had been gainfully employed, paid taxes, and had never been to prison.

21.    Before being transported to Coffee Creek to serve her sentence, Ms. Gillette was provided just one back-up hearing aid that she had not used for years because it was outdated and not tuned to her current needs.  The old hearing aid did not have her most recent prescription and was designed to work in concert (like a stereo system) with the hearing aid for the other ear.  Without the second hearing aid, the lone and outdated hearing aid offered little hearing assistance.   The lone hearing aid was also damaged and frequently shorted out.

22.     Coffee Creek Correctional Facility is the only women's prison in the state of Oregon.  As such, it houses the most violent female offenders in the entire state.  It is a predatory environment where inmates and prison employees prey on vulnerable prisoners.

23.     Ms. Gillette's age, multiple sclerosis diagnosis, and inexperience in interacting with convicted felons made her extremely vulnerable.

24.     Not being able to hear, however, deprived her of one of the most important senses that she needed to navigate the prison system and effectively communicate and form alliances with other inmates and corrections officers.  It also made it easy for others to sneak up on her.

25.     Upon arrival at Coffee Creek correctional facility, Ms. Gillette requested working hearing aids, batteries for her one poorly functioning hearing aid, and her heart and multiple sclerosis medications.  She was not provided these.

26.     Ms. Gillette's requests for hearing aids were made dozens of times over her year-long incarceration at Coffee Creek.  Defendants never followed through or obtained functioning hearing aids for her during her entire year in prison.

27.     Ms. Arrington, whose main job was to assess individuals with disabilities, accused Ms. Gillette of "faking" her hearing loss even though it was medically documented years prior to her conviction and documented in the prison's own medical records for her. Ms. Arrington also told several correctional officers that Ms. Gillette was "faking" her deafness and many of the prison guards began to doubt, mock, laugh at, and tease Ms. Gillette about her hearing and ignored her requests and pleas for help.

28.     The Defendants who provided Ms. Gillette's medical care all noted in her medical records that she was very hard of hearing and would often shout and use hand signals to communicate and requested working hearing aids.  Instead of providing Ms. Gillette an appointment with an audiologist, though, the medical providers did nothing other than document Ms. Gillette's hearing loss in her medical records.

29.     As a result of not receiving a functioning pair of hearing aids while in prison, Ms. Gillette was placed in a constant state of anxiety.

30.     As a result of not being able to hear, Ms. Gillette would not hear prison announcements of lockdowns or instructions from guards.  The guards would then punish her for being noncompliant and would place her in solitary confinement (the hole) for days at a time for not complying with their instructions.  This happened multiple times to her over the course of her stay.

31.     Ms. Gillette's inability to hear made her unable to communicate with prison guards and officials making it difficult for her to advocate for herself explain to them that she couldn't hear and that she did not deserve additional punishment or solitary confinement.

32.     In an attempt to hear prison guard instructions, Ms. Gillette would lean her head forward when they were speaking to her.  Some prison guards took this as a threat and would pull out their pepper spray cannisters and hold them inches from her face.  Other inmates would have to announce to the guards that she wasn't a threat and was just deaf and trying to hear.

33.     Ms. Gillette's inability to hear caused prison guards and other inmates to mistake her as cognitively delayed.   Some prison guards and other inmates called her "retarded."

34.     Ms. Gillette's inability to hear caused her to miss laundry announcements. As such, she would frequently have to remain in filthy clothes and bedding and smelled poorly.

35.     Ms. Gillette's inability to hear caused her to miss announcements for meals and, as such, she missed meals.

36.     Ms. Gillette's inability to hear caused her to not be able to take advantage of prison programming.  It was recommended that she partake in alcohol counseling which would have taken time off from her sentence.  Because the alcohol counseling was in a group session, though, she could not functionally participate because she could not hear and thus did not get time taken off her sentence or the benefits of alcohol counseling.

37.     Ms. Gillette could not partake in PTSD and anxiety counseling because her inability to not be able to hear made her unable to participate in group sessions.

38.     Ms. Gillette's inability to hear caused her to not be able to receive the full benefits of mental health counseling because she could not hear everything being said to her by her counselor.

39.     Ms. Gillette's inability to hear caused her to have to forego educational and training programming and opportunities in prison.  She wanted to operate the forklift as her prison job and receive a forklift certificate that could have helped her find employment

upon release, but was not allowed to do so because her hearing loss was considered a safety risk.

40.    Ms. Gillette was also not able to take the prison programming and education on real estate transactions because she could not hear.

41.    As a result of not being able to hear, Ms. Gillette was also not able to hear announcements for the daily dispensing of inmate medicine (known at Coffee Creek as "MedLine.")  Ms. Gillette needed daily medications for her MS and blood pressure and being unable to hear the announcements she would frequently miss doses of her medicine causing her to endure pain, harm, and anxiety.

42.    Not having a set of working hearing aids for over a year caused Ms. Gillette's hearing to worsen while in prison.

43.    As a result of not having a set of working hearing aids for her year in confinement, Ms. Gillette now faces a much higher risk of contracting Alzheimer's and dementia.

44.    As a result of not having a set of working hearing aids for her year in confinement, Ms. Gillette could not receive the full benefits of social interaction, phone calls from family members and friends, and struggled to communicate her medical needs and receive medical care.

45.    In June of 2018, Ms. Gillette suffered extreme stomach pain and was vomiting profusely.

46.    She was so sick, she had to be assisted by another inmate to MedLine.  She was eventually taken to the prison infirmary and told that she would never be taken to the

hospital.  Ms. Gillette was not provided medical care to relieve her pain or a sufficient medical examination for hours and was not even provided a blanket for warmth.  She then began vomiting in the bed and passed out.  Later, she was found by an inmate worker on the floor passed-out, lying in her own vomit.  The inmate worker brought her a blanket.

47.   Ms. Gillette remained on the floor for hours unconscious before finally being brought to the hospital.

48.   At the hospital, surgery was performed to remove an intestinal blockage.  The surgery required that an incision be made through her abdominal muscles so that her intestines could be accessed by the surgeon.

49.   After the intrusive surgery, Ms. Gillette was prescribed pain killers by the surgeon.  CoffeeCreek employees rushed her back to prison right away.  She was allowed just 24 hours to recuperate in the prison infirmary and then sent back to the general population even though she could barely sit-up and walk because her abdominal wall had been operated on.  She was only given 6 pills for pain medication causing her to live in incredible pain.

50.   After the surgery on her intestines, Ms. Gillette was supposed to be on a liquids and soft-food diet.  Defendants never provided her with a special diet.

## COUNT I:

## VIOLATION OF 42 U.S.C. § 1983 – THE EIGHTH AMENDMENT

### (Against Defendants Arrington, Ridgely, Carr, Aldrich, Rossi, Dickson, Pries, and John/Jane Does 1-5).

51.    Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint.

52.    Plaintiff is entitled to be free from cruel and unusual punishment pursuant to the 8th and 14th Amendments of the United States Constitution.  This protection includes a right to adequate and timely medical care and extends to pain management.  Failure to provide hearing aids and adequate and timely medical care amounts to deliberate indifference to a prisoner's wellbeing and constitutes cruel and unusual punishment in violation of the 8th Amendment.  Recklessness with respect to the required standard of care can constitute "deliberate indifference" to a prisoner's medical needs under the 8th Amendment.  In this case, Defendants acted with deliberate indifference in failing to respond to Plaintiff's medical needs and need for hearing aids in a continuous uninterrupted fashion from her admission until her release.

53.    The conduct described above will establish that Defendants in their individual capacities, under color of state law, violated Plaintiff's Eight Amendment rights to be free from cruel and unusual punishment.

54.    Plaintiff alleges that the acts and omissions performed by Defendants violated the 8th Amendment standards in the following ways:

a. Defendants failed to assess and treat Plaintiff's medical conditions, including but not limited to her, hearing loss in a timely manner;

b. Defendants failed to refer Plaintiff to a medical provider who could assist with her hearing loss if they were incapable of doing so;

c. Defendants failed to provide Plaintiff with sufficient pain management after her surgery;

d. Defendants failed to provide hearing assistance devices to Plaintiff;

55.    The neglectful, deliberate failure to act by Defendants was in the face of objective background medical information, noticeable and articulated symptoms by Plaintiff, and contrary to the opinions and orders of outside medical experts.

56.    Defendants subjected Plaintiff to these deprivations of constitutional rights either maliciously, intentionally, deliberately, willfully, or by acting with reckless disregard for whether Plaintiff's civil rights would be violated by their actions.

57.    The acts and omissions that evidence deliberate indifference to Plaintiff's serious medical needs caused Plaintiff needless inability to hear, avoidable pain, suffering, anxiety, emotional distress, and caused additional permanent hearing loss and unnecessarily increased Plaintiff's risks of Alzheimer's and dementia which will increase Plaintiff's future medical care, live-in care, and loss of ability to earn a living and future pain, suffering, dread and anxiety.

58.    Plaintiff's damages are in an amount in excess of seventy-five thousand dollars to be determined at trial.

59.    Punitive damages are also properly awardable against Defendants and are hereby claimed as a matter of federal common law, *Smith v. Wade*, 461 U.S. 30 (1983), and, as such, are not subject to the state of Oregon's pleading requirements or the differing standard of proof.

60.    Plaintiff is entitled to recovery of her costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

## COUNT II:

## FAILURE TO ACCOMODATE – AMERICANS WITH DISABILITIES ACT

### (Against Defendants the State of Oregon; Oregon Department of Corrections; and Colette S. Peters in her official capacity)

61.    Plaintiff re-alleges and incorporates by reference all prior paragraphs of this Complaint.

62.    Title II of the American with Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

63.    A Department of Justice regulation implementing Title II of the ADA states that "a public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would

fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

64.     The requirement to reasonably accommodate individuals with disabilities applies to employees, corrections officers, and medical staff at corrections facilities.

65.     Plaintiff was a qualified individual with a physical disability as she suffered from drastic hearing loss which substantially limited her ability to communicate, comprehend, and hear.

66.     Defendant knew Plaintiff was such a qualified individual both because of information provided to them from Plaintiff's file as well as Plaintiff communicated it to them herself.

67.     Defendant discriminated against Plaintiff by failing to provide a reasonable accommodation of functioning hearing aids during the course of her entire custodial detention.

68.     Defendants also failed to engage in any interactive process with Plaintiff to assess and facilitate a potential accommodation.

69.     As a result of Defendants' actions, Plaintiff has been injured, suffering severe physical, mental and emotional pain, hearing loss, dignitary harm, discomfort, embarrassment, humiliation, fear, anxiety, apprehension, sleeplessness, a general diminished sense of personal safety, medical care fees, future medical care and life care needs, and more. Defendants' conduct also deprived Plaintiff of the ability to interact, communicate, avail herself to mental health counseling, prison programming, educational services, and inmate employment opportunities.

70.    Total damages suffered by Plaintiff are to be determined at trial, but are in excess of $75,000.00.

71.    Plaintiff is also entitled to her costs and attorney fees under Title II of the ADA.

## COUNT III:

## VIOLATION OF SECTION 504 OF THE REHABILITATION ACT

### (Against Defendants State of Oregon; Oregon Department of Corrections; and Colette Peters in her official capacity)

72.    Plaintiff re-alleges the allegations in all preceding paragraphs of this Complaint.

73.    The Rehabilitation Act § 504 forbids organizations that receive federal funding from discriminating against people with disabilities and excluding individuals with disabilities from participation in or denying individuals with disabilities the benefits of any program or activity receiving federal financial assistance.

74.    Plaintiff was a qualified individual with a physical disability as she suffered from drastic hearing loss which substantially limited her ability to communicate, comprehend, and hear.

75.    Defendants receive federal funding.

76.    Defendants were made aware of Plaintiff's disability.

77.    Defendants discriminated against Plaintiff and intentionally or with deliberate indifference failed to provide her a reasonable accommodation which resulted in denial of meaningful access to prison education and rehabilitation programs and other

programs, services, and basic human rights described above in preceding paragraphs of the Complaint.

78.     As a direct and proximate result of the acts and omissions of the Defendants, Plaintiff has suffered emotional distress, humiliation, physical pain, indignity, injury, and loss in an amount yet to be determined at trial, but in excess of seventy-five thousand dollars $75,000.00.

79.     Plaintiff is entitled to recovery of her costs, including reasonable attorney fees.


## **RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor as follows:

1.     That the practices of Defendants complained of herein be adjudged in violation of the rights secured by Plaintiff under the Eighth and Fourteenth Amendments, the ADA, and Section 504 of the Rehabilitation Act.

2.     That Plaintiff is awarded compensatory damages and future compensatory damages in an amount to be established at trial.

3.     That Plaintiff is awarded damages for mental anguish and pain and suffering in amount to be established at trial.

4.     That Plaintiff is awarded punitive damages against Defendants under the Civil Rights Act of 1871, 42 U.S.C. § 1983.

5.     That the Court award Plaintiff her attorney's fees and costs and expenses of this action and prejudgment interest pursuant to 42 U.S.C. §§ 1983 and 1988, the ADA, and Section 504 of the Rehabilitation Act.

6.     For such other and further relief as this Court deems just and equitable.

Respectfully submitted,

Dated:  March 27, 2020

_____
Christopher J. Kuhlman, #170428

**KUHLMAN LAW, LLC**
160 NW Irving Ave., Suite 203
Bend, OR 97703
Phone: 541.385.1999
Fax: 612.435.9835
Email: ckuhlman@cklegal.com

ATTORNEY FOR PLAINTIFF