IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **TERESA GILLETTE**, | Case No. 3:20-cv-00513-IM |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **STATE OF OREGON**; **OREGON DEPARTMENT OF CORRECTIONS**; **COLETTE PETERS**, in her official capacity; **LISA M. ARRINGTON**, individually; **JANET RIDGLEY**, individually; **NICOLE CARR**, individually; **BRITTNEY ALDRICH**, individually; **SARA ROSSI**, individually; **ANGELINA DICKSON**, individually; **CHRISTINE PRIES**, individually; **JOHN AND JANE DOES 1-5**, individually, | |
| Defendants. | |

Christopher J. Kuhlman, Kuhlman Law LLC, 160 NW Irving Avenue, Suite 203, Bend, Oregon 97703. Attorney for Plaintiff.

Ellen F. Rosenblum, Attorney General, and Tracy Ickes White, Senior Assistant Attorney General, Oregon Department of Justice, 1162 Court Street NE, Salem, Oregon 97301. Attorneys for Defendants State of Oregon, Oregon Department of Corrections, Colette Peters, Lisa M. Arrington, Janet Ridgley, Nicole Carr, Brittney Aldrich, Sara Rossi, Angelina Dickson, and Christine Pries.

**IMMERGUT, District Judge.**

This case comes before this Court on a Motion for Summary Judgment filed by Defendants State of Oregon, Oregon Department of Corrections, Colette Peters, Lisa Arrington, Janet Ridgley, Nicole Carr, Brittney Aldridge, Sara Rossi, Angelina Dickson, and Christine Pries (collectively, "Defendants"), seeking summary judgment on all claims against them. ECF 33. A hearing on the motion was held on July 7, 2022. ECF 49. This Court has considered the evidence and arguments presented, and for the following reasons GRANTS IN PART and DENIES IN PART Defendant's Motion for Summary Judgment. Defendants are entitled to summary judgment on Plaintiff's § 1983 claims. Additionally, Defendant Peters is dismissed from this action. However, summary judgment is denied as to Plaintiff's Americans with Disabilities Act ("ADA") and Rehabilitation Act claims.

## STANDARDS

### A.  Summary Judgment

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-movant, in opposition to the motion, "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the

plaintiff's position [is] insufficient . . . ." *Anderson*, 477 U.S. at 252, 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

**B.  42 U.S.C. § 1983**

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To state a claim under § 1983, a plaintiff must "plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).

A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). Courts require "specific facts as to each individual defendant's" role in the alleged deprivation, and courts "must take a very individualized approach which accounts for the duties, discretion, and means of each defendant." *Leer v. Murphy*, 844 F.2d 628, 633–34 (9th Cir. 1988); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (explaining there is no respondeat superior liability under § 1983, and a "supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them").

# BACKGROUND[1]

Plaintiff was incarcerated at Coffee Creek Correctional Facility ("CCCF"), operated by the Oregon Department of Corrections ("ODOC"), from September 29, 2017 to September 18, 2018. ECF 1 at ¶¶ 1, 3. Plaintiff suffers from extensive hearing loss which she developed following a motor vehicle accident in 1986; the accident also resulted in a traumatic brain injury. *Id*. at ¶ 15. Plaintiff also suffers from Multiple Sclerosis. *Id*.

Prior to her incarceration, Plaintiff normally wore two hearing aids. However, during her arrest, her hearing aids became dislodged and lost. ECF 43-1 at 20. While housed at CCCF, Plaintiff had only one hearing aid, which was older, not in "good shape," and had been previously damaged. *See id.* at 20–21.[2] While at CCCF, the hearing aid fell onto the concrete and its plastic shell broke; Plaintiff also accidentally wore the hearing aid into the shower while at CCCF. *Id*. at 22–23.

Plaintiff's medical records at CCCF stated that she suffered from hearing loss, ECF 43-3 at 3, and Plaintiff immediately informed Defendant Lisa Arrington, CCCF's disabilities accommodations coordinator, of her hearing impairment, and continued to do so through her incarceration. On October 12, 2017, Plaintiff requested assistance with her hearing aids from Arrington. ECF 43-2 at 1. Arrington responded to this request on October 17, 2017 only that she "can help," but that Plaintiff would be "financially responsible for such costs." *Id*. On October 13, 2017, prior to receiving a response to her October 12 request, Plaintiff again asked Arrington

---

[1] The following facts are taken from Plaintiff's Complaint and the parties' materials related to Defendants' Motion for Summary Judgment and are viewed in the light most favorable to Plaintiff, the non-movant. *See Clicks Billiards*, 251 F.3d at 1257.

[2] *See also* ECF 33 at 3 (explaining that Defendants do not dispute "[f]or purposes of this motion [for summary judgment] only," that Plaintiff "had one of her older hearing aids").

for assistance "with [her] hearing" via an Inmate Communication Form or "kite." *Id.* at 3. Plaintiff explained that "hearing is next to impossible," and requested adjustments to her housing environment. *Id.* Arrington responded that she does not "influence housing or cell mates," and that Plaintiff's hearing impairment does not exempt her from the rules. *Id.*

On October 14, 2017, Defendant Angelina Dickson, a registered nurse at CCCF, assessed Plaintiff after she was sent to "segregation" at CCCF. ECF 43-1 at 307; ECF 40 at 18–19. Plaintiff reported to Dickson that she had "faulty hearing aids." ECF 43-3 at 61; ECF 43-1 at 306. In response, Dickson instructed Plaintiff to submit a kite to "Tracy [Bechelder] for repair of hearing aids." ECF 43-3 at 61; ECF 43-1 at 306 (explaining that Tracy "deal[t] with eyeglasses and hearing aids for patients").

On October 17, 2017, Plaintiff wrote to Arrington of difficulties hearing instructions; Arrington responded that she would request Plaintiff's medical records but that "per [their] conversation, [Plaintiff] read[s] lips." ECF 43-2 at 7. On November 9, 2017, Plaintiff sent a kite to Arrington "request[ing] to have [her] hearing aids both cleaned [and] re-calibrated." *Id.* at 11. Arrington appears to have provided no response. *Id.* On November 15, 2017, Plaintiff requested an "impaired hearing" sticker for her cell, information on a hearing test and hearing aid recalibration, and information on a "wobble watch." *Id.* at 13. Arrington responded on November 21, 2017 by providing her with her requested information, noted she was waiting on a "price quote for [the] hearing aid[ ]," and told Plaintiff to "let [her] know." *Id.* On November 20, 2017, Plaintiff submitted a kite to Arrington complaining about difficulties functioning in her housing environment and missing "medline," fire drills, and lockdowns due to her hearing. *Id.* at 15. Arrington responded on November 21, 2017 that she does not influence housing, that Plaintiff's

current housing environment was "significantly quieter than medium [security]," and that Plaintiff was "receiving accommodations for daily assisted living." *Id.*

On November 20, 2017, Plaintiff submitted kite addressed to "Dr. Lossier," in which Plaintiff noted that she is "almost completely deaf, which triggers severe anxiety, and makes it difficult to impossible to function in loud dorm situations." *Id.* at 209. She requested to be moved to a different housing environment. *Id.* In response, on November 22, 2017, Defendant Nicole Carr, a nurse at CCCF, noted that Plaintiff "ha[s] been placed on the nurse triage call out." *Id.* On November 23, 2017, Carr noted that Plaintiff reported issues with anxiety due to her hearing impairment. ECF 43-3 at 56. Carr referred Plaintiff to Behavior Health Services ("BHS"). *Id.*; *see also* ECF 43-4 at 122–23; ECF 43-1, at 141–42, 239.

On December 31, 2017, Plaintiff requested a "duplicate 'hearing impaired' ID card," due to hers getting wet, but Arrington denied the request. ECF 43-2 at 17. Plaintiff sent kites to Arrington on January 17, 2018 and March 11, 2018 regarding repairing her hearing aids. *Id.* at 19–23. On March 16, 2018, Arrington informed Plaintiff she needed two "CD-28's" each for $10 in order to send the hearing aids out for repair. *Id.* at 23. However, Plaintiff had only provided one for $20. *Id.* at 24. Arrington testified that she never received the two requests for $10 each from Plaintiff. ECF 43-1 at 129. On May 9, 2018, Plaintiff requested hearing amplifiers from Arrington. ECF 43-2 at 27. Arrington responded on May 14, 2018 that Plaintiff would need to purchase them and that they cost around $50 to $80. *Id.* It does not appear further action was taken.

In late April, a "physician order" was placed for "ROI audiologist" and "TLC ['Therapeutic Level of Care'] for . . . audiologist eval." ECF 43-3 at 28. In about May 2018, Defendant Janet Ridgley, a nurse practitioner at CCCF, became Plaintiff's medical provider.

ECF 1 at ¶ 7; ECF 43-2 at 143. Around that time, Plaintiff spoke to Ridgley about her hearing aids being broken. ECF 43-2 at 143. Ridgley told Plaintiff that Ridgley would "need to take it to TLC and that [Plaintiff] would probably need a hearing test first." *Id*. On May 10, 2018, Ridgley, along with the other members of the TLC Committee, reviewed a TLC request that Plaintiff receive an audiology exam and new hearing aids, and approved Plaintiff for an audiogram. ECF 43-3 at 189; ECF 43-2 at 143. Plaintiff was then referred by Ridgley for the audiogram appointment in June. ECF 43-3 at 187.

Plaintiff spoke to Defendant Rossi, a registered nurse at CCCF, regarding bleeding in Plaintiff's right ear on June 9, 2018. *Id*. at 45. Rossi examined her ear, advised her not to use Q-tips and to use "OTC analgesics," and to follow up via kite. *Id*.; ECF 43-2 at 174–75.

Around June 13, 2018, Plaintiff began to experience severe stomach pain. ECF 1 at ¶ 45; ECF 43-3 at 146. Though staff were initially unconvinced that Plaintiff needed medical care, Plaintiff eventually was taken to the CCCF infirmary on June 13, 2018. *See* ECF 43-1 at 51–52. She was transferred on the same day to an outside hospital where she received abdominal surgery for an intestinal blockage on June 15, 2018. *Id*. at ¶ 46–48; ECF 43-3 at 44, 146–51. She was released back to CCCF on June 19, 2022. ECF 43-3 at 152. Plaintiff received pain medication at CCCF following her return from the hospital, though she did not receive it "immediately" because staff were waiting "[u]ntil they got the report from [the hospital]." ECF 43-1 at 59–60.

Plaintiff's audiology appointment was cancelled due to Plaintiff's hospitalization at the time of the appointment, and Ridgley was notified on June 15, 2018. ECF 43-3 at 188. According to a handwritten note, another audiogram was unable to be scheduled prior to Plaintiff's release from incarceration. *Id*. (noting "[u]nable to r/s prior to release").

Upon Plaintiff's return to CCCF from the hospital, she was examined by Defendant Brittney Aldrich, a registered nurse at CCCF. ECF 1 at ¶ 8; ECF 43-1 at 274. On June 19, 2018, Aldrich noted in the Infirmity Progress Notes that there were "no batteries in [Plaintiff's] hearing aid" and that Plaintiff "cannot hear at all." ECF 43-3 at 43. The record reflects that Aldrich did not take further action regarding Plaintiff's hearing issues. *See* ECF 43-1 at 277.

On August 2, 2018, Pries responded to a kite submitted by Plaintiff on July 27, 2018, in which Plaintiff reported that she dropped her right side hearing aid, "it broke into pieces," and she needed "glue." ECF 43-4 at 212. Plaintiff also reported that she "cannot hear at all without [the hearing aid]" and that ODOC had "not helped with repairs" on the left one. *Id*. Pries responded that Plaintiff should work with Defendant Arrington "for ADA needs." *Id*. Pries did not schedule Plaintiff for an appointment with a medical provider, nor did she meet with Plaintiff or follow up with Arrington. *See id*.; ECF 43-2 at 109–10.

Plaintiff was released from CCCF custody on September 18, 2018. ECF 1 at ¶ 1.

## DISCUSSION

### A. 42 U.S.C. § 1983 Claims

Plaintiff asserts a violation of the Eighth Amendment, under 42 U.S.C. § 1983, against Defendants Arrington, Ridgley, Carr, Aldrich, Rossi, Dickson, and Pries (collectively "Individual Defendants"), alleging these Defendants were deliberately indifferent to a serious medical need. *See* ECF 1 at ¶¶ 51–60.

#### 1. Standards

Deliberate indifference to serious medical needs is a cognizable claim for violation of the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish deliberate indifference:

> First, the plaintiff must show a serious medical need by
> demonstrating that failure to treat a prisoner's condition could
> result in further significant injury or the unnecessary and wanton
> infliction of pain. Second, the plaintiff must show the defendant's
> response to the need was deliberately indifferent.

*Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citations and internal quotation

marks omitted)). To satisfy the second prong, a plaintiff must show there was "(a) a purposeful

act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the

indifference." *Id.*; *see also Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014). Deliberate

indifference can be "manifested by prison doctors in their response to the prisoner's needs or by .

. . intentionally denying or delaying access to medical care or intentionally interfering with the

treatment once prescribed." *Estelle*, 429 U.S. at 104–05 (footnotes omitted); *see also Jett*, 439

F.3d at 1096 (explaining that deliberate indifference may be established by showing that prison

officials denied, delayed, or intentionally interfered with medical treatment or by the way prison

officials provided medical care).

"Mere negligence in diagnosing or treating a medical condition, without more, does not

violate a prisoner's Eighth Amendment rights." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir.

2004) (internal quotation marks and citation omitted); *see also Wilhelm v. Rotman*, 680 F.3d

1113, 1122 (9th Cir. 2012) ("Medical malpractice does not become a constitutional violation

merely because the victim is a prisoner." (internal quotation marks and citation omitted)).

### 2.  Abdominal Surgery-Related Claim

In her Complaint, Plaintiff alleges that one of the ways Individual Defendants violated

her Eighth Amendment rights was by "fail[ing] to provide Plaintiff with sufficient pain

management after her [abdominal] surgery." ECF 1 at ¶ 54. Defendants argue, somewhat

anemically, that Plaintiff has abandoned this claim because she has failed to provide expert

evidence on the standard of care. Though this Court does not necessarily agree that Plaintiff has

"abandoned" this claim by failing to do so, to the extent Defendants argue there is insufficient evidence in the record to make out a § 1983 claim, *see* ECF 46 at 6 n.1, this Court agrees.

Plaintiff contends that because "[a]ny reasonable juror knows that after surgery, the patient is sore and after injury to the abdomen that they may not be able to digest foods properly," Plaintiff's "abdomen claims should proceed to trial." ECF 40 at 28. But this is not the standard by which this Court determines whether Plaintiff's claim may proceed past the summary judgment stage. As explained above, Plaintiff must satisfy a two-part test to establish an Eighth Amendment violation. *Toguchi*, 391 F.3d at 1057. However, Plaintiff has failed to point to any evidence in the record that any Defendant was deliberately indifferent to her pain following her abdominal surgery in June 2018. Plaintiff argues only that Defendant Carr was "made aware" of Plaintiff's pain after her surgery. *See* ECF 40 at 17. This is insufficient to show deliberate indifference not only as to Carr but also as to the remaining Individual Defendants. "[I]t is not the Court's role to serve as [Plaintiff's] advocate" nor must the Court "sift through the record" where Plaintiff as failed to do so herself. *Throop v. Diaz*, No. 12cv1870-LAB (NLS), 2015 WL 847445, at *1 (S.D. Cal. Feb. 26, 2015). This Court's own review of the record confirms the insufficiency. While Plaintiff has complaints about her treatment post-surgery, she has failed to "set forth specific facts as to each individual defendant's deliberate indifference." *Leer*, 844 F.2d at 634; *see, e.g.*, ECF 43-1 at 50–51 (testifying that kitchen staff refused to abide by her doctor-prescribed soft foods diet following her surgery); *id.* at 59–60 (testifying that "one of the doctors" at triage did not give her pain medication until they received a "report from [the hospital]"); *id.* at 51 (stating that "they wouldn't let [her] have an extra pillow" after surgery). Moreover, where the claim involves a choice between alternative courses of treatment, a plaintiff must show that the course of treatment chosen was medically unacceptable under the

circumstances, and that they chose this course in conscious disregard of an excessive risk to the plaintiff's health. *Toguchi*, 391 F.3d at 1058. Plaintiff has not done so here. Accordingly, summary judgment on the abdominal surgery-related § 1983 claim is granted.

### 3. Hearing-Related Claims

The focus of Plaintiff's Complaint and § 1983 claim against Individual Defendants is based on her hearing-related difficulties and Defendants' alleged deliberate indifference to those difficulties. Because there appears to be no dispute about whether Plaintiff's medical issues constitute a serious medical need, *see, e.g.*, ECF 33 at 2; ECF 46 at 2, this Court analyzes these § 1983 claims under the second step of the deliberate indifference test, and concludes that a reasonable juror could not find Individual Defendants were deliberately indifferent.

#### a. Defendants Carr, Dickson, Rossi, Aldrich, Pries, and Ridgley

This Court first considers whether a reasonable juror could conclude that Defendants Carr, Dickson, Rossi, Aldrich, Pries, or Ridgley—CCCF nurses—were deliberately indifferent to Plaintiff's hearing-related needs. Viewing the evidence is the light most favorable to Plaintiff, this Court concludes a reasonable juror could not find deliberate indifference. Plaintiff has not "set forth specific facts as to [these Defendants'] deliberate indifference," *Leer*, 844 F.2d at 634, nor does the evidence in the record show they "kn[ew] of and disregard[ed] an excessive risk to [Plaintiff's] health," *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Jett*, 439 F.3d at 1096.[3]

---

[3] Plaintiff's expert, Dr. Susan Lawrence, opined that "[t]he inactions of RN's Dickson, Rossi, Carr, Pries, and Aldrich were deficient and below appropriate standards of care, while knowing [Plaintiff] had severe hearing loss, and showing a conscious failure to use due care." ECF 43-1 at 252. However, negligence and even "civil-law recklessness" are insufficient to establish liability under § 1983. *Farmer*, 511 U.S. at 835–37. *Cf. Hangarter v. Provident Life & Accident Ins. Co.,* 373 F.3d 998, 1016 (9th Cir. 2004) ("[A]n expert witness cannot give an opinion as to her *legal conclusion*, i.e., an opinion on an ultimate issue of law." (internal quotation marks and citation omitted)). Even assuming the care fell below the standard of adequate care, the record evidence does not show that it fell so far below the standard such that a

The record reflects Plaintiff interacted with Carr on two occasions.[4] On November 20, 2017, Plaintiff submitted a kite noting that she is "almost completely deaf, which triggers severe anxiety, and makes it difficult to impossible to function in loud dorm situations." ECF 43-4 at 209. Carr "placed [Plaintiff] on the nurse triage call out." *Id.* Carr explained that she did so, rather than sending Plaintiff directly to a doctor or other provider because "provider appointments can be days or weeks out sometimes" while "triage would generally be the next day" and would allow the nurse to determine whether an urgent appointment was needed. ECF 43-4 at 121. On November 23, 2017, Carr noted that Plaintiff reported issues with anxiety due to her hearing impairment, and she referred her to BHS. ECF 43-3 at 56; ECF 43-4 at 122–23. Plaintiff takes issue with the fact that Carr referred her to BHS rather than to a medical provider for a hearing evaluation. ECF 43-1 at 251. But to prevail on an Eighth Amendment claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances, and that they chose this course in conscious disregard of an excessive risk to the plaintiff's health. *Toguchi*, 391 F.3d at 1058. Plaintiff has not done so here: Carr testified that she referred Plaintiff to BHS "[b]ecause it seemed like this was anxiety" and Carr believed Plaintiff "was already referred to a provider about [her] hearing." ECF 43-4 at 123. Based on this record, a reasonable juror could not find that Carr's conduct rose to the level of deliberate indifference.

---

reasonable juror could find these Defendants were subjectively aware of a risk of serious harm to Plaintiff, as explained below.

[4] Additionally, this Court has scoured the Complaint and confirms that Plaintiff fails to even plead any facts about Carr, aside from including Carr in the caption of the § 1983 claim. *See* ECF 1 at 12. This is insufficient to plead § 1983 liability against Carr. *Evans v. Peters*, No. 2:16-cv-00928-MK, 2022 WL 827192, at *4 (D. Or. Mar. 18, 2022).

As to Defendants Aldrich, Rossi, and Dickson, Plaintiff testified that she could not recall interacting with any of them. ECF 43-1 at 35. Dickson's first interaction with Plaintiff—and the interaction at issue in this case—was on October 14, 2017. ECF 43-1 at 307; ECF 40 at 18–19. When Plaintiff reported that she had "faulty hearing aids," Dickson instructed Plaintiff to submit a kite to "Tracy [Bechelder] for repair of hearing aids." ECF 43-3 at 61; *see also* ECF 43-1 at 306 (explaining that Tracy "deal[t] with eyeglasses and hearing aids for patients"). Dickson testified that though Plaintiff reported the issue with her hearing aid to Dickson, Dickson did not observe Plaintiff to have a hearing impairment when they communicated, nor did Dickson understand Plaintiff to be requesting replacement hearing aids. *See* ECF 43-1 at 301–02. On this record, a reasonable juror could not find that Dickson's conduct was deliberately indifferent.

The record reflects that Plaintiff spoke to Rossi regarding bleeding in Plaintiff's right ear on June 9, 2018, and that Rossi examined and treated her ear. ECF 43-2 at 174–75; ECF 43-3 at 45. Rossi's conduct falls short of meeting the standard of deliberate indifference.

While treating Plaintiff following surgery, on June 19, 2018, Aldrich noted that there were "no batteries in [Plaintiff's] hearing aid" and that Plaintiff "cannot hear at all," ECF 43-3 at 43, but she could not remember whether or not she referred Plaintiff to a provider for her hearing, and there is no documentation of her doing so, ECF 43-1 at 277. Plaintiff takes issue with Aldrich's failure to address her hearing issue. ECF 40 at 17–18, 27–28; ECF 43-1 at 250–51. But even if the record shows negligence, it does not show that Aldrich was deliberately indifferent, that she was subjectively aware of a risk of serious harm, and purposely failed to respond.

Plaintiff testified that she remembered Defendant Pries's name "distinctly," but lacked any "specific memory" of conversations or meetings with her. ECF 43-1 at 35–36. In response to

a kite submitted on July 27, 2018 regarding Plaintiff's broken hearing aid and inability to hear, Pries responded that Plaintiff should work with Defendant Arrington "for ADA needs." ECF 43-4 at 212. Pries did not schedule Plaintiff for an appointment with a medical provider, nor did she meet with Plaintiff or follow up with Arrington. *See id*.; ECF 43-2 at 109–10. Pries testified that she typically did not meet with inmates or follow up with them regarding their non-emergency health care requests because she expected them "to follow up with [her] if they were not able to get what they needed in the way that I asked them to get it." ECF 43-2 at 111. Specifically regarding Plaintiff, Pries explained that "the medical portion was done," because Plaintiff stated she possessed hearing aids but they were broken. *Id*. Pries's conduct—her failure to follow up or to ensure that the request was made—may have been negligent, but the evidence in the record does not allow a reasonable juror to find she was deliberately indifferent.

Plaintiff testified that she spoke to Defendant Ridgley about her hearing impairment and issues with her hearing aids, but that Ridgley failed to assist her. ECF 43-1 at 33. The record reflects that Ridgley became Plaintiff's provider around May 2018 and approved a request for Plaintiff's audiogram on May 10, 2018. ECF 43-2 at 143; ECF 43-3 at 189. Plaintiff was then referred for the audiogram appointment in June, but that was canceled due to Plaintiff's emergency surgery. ECF 43-3 at 187; ECF 43-2 at 148. Ridgley testified that she did not know why it took until May 2018 for an audiogram to be scheduled, when Plaintiff was incarcerated beginning in September 2017, nor could she recall why she did not refer Plaintiff for another appointment following the cancelation or if she ever followed up with Plaintiff about scheduling another appointment. ECF 43-2 at 148–51. Ridgley did recall speaking to Defendant Arrington in the summer of 2018 to follow up with her regarding Plaintiff's hearing aid issues. *Id*. at 151.

PAGE 14 – OPINION AND ORDER

While the record reflects that Plaintiff was not scheduled for an audiogram until May 2018—about eight months into her incarceration—it also reflects that Ridgley did not become Plaintiff's provider until about May 2018 and on May 10, 2018 recommended, as part of the TLC Committee, that Plaintiff receive an audiogram. Though Ridgley did not follow up with Plaintiff after her initial audiogram appointment was cancelled and the appointment was not rescheduled, the notation on the referral indicated that an audiogram could not be rescheduled during the roughly three months remaining in Plaintiff's incarceration. On this record, a reasonable juror could not find Ridgley was deliberately indifferent to Plaintiff's hearing issues.

Because this Court finds a reasonable juror could not find that Defendants Carr, Dickson, Rossi, Aldrich, Pries, or Ridgley were deliberately indifferent on Plaintiff's hearing claims, this Court declines to address qualified immunity.

### b. Defendant Arrington

Having found the nurse Defendants are entitled to summary judgment on the hearing-related § 1983 claims, this Court turns to Defendant Arrington. Beginning shortly after arriving at CCCF and throughout her incarceration at CCCF, Plaintiff sent numerous kites to Arrington regarding her hearing issues and lack of fully functioning hearing aids. *See* ECF 40 at 6–13. Arrington responded to or took action in relation to some of them, but appears to have taken no further action as to others. *Id*.

The record demonstrates that Arrington could have, and possibly should have, been more responsive to Plaintiff's requests. Arrington may be negligent for failing to promptly provide Plaintiff with replacement hearing aids or otherwise address her hearing issues, but the record does not reasonably demonstrate deliberate indifference under the applicable standard. On this record, a reasonable juror, and this Court, cannot find that Arrington purposefully ignored or failed to respond to Plaintiff's hearing-related needs and that she was subjectively aware of a risk

PAGE 15 – OPINION AND ORDER

of serious harm to Plaintiff. Accordingly, summary judgment on these claims is warranted. This Court declines to address qualified immunity.

## B.  ADA and Rehabilitation Act Claims

Plaintiff alleges that Defendants State of Oregon, ODOC, and Peters violated the ADA and Rehabilitation Act by failing to accommodate her and excluding her from participation in CCCF services, programs, and activities. ECF 1 at ¶¶ 61–79. [5]

### 1.  Standards

Title II of the ADA provides: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act provides: "No otherwise qualified individual with a disability . . . shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

To establish a claim under the ADA or Rehabilitation Act, a plaintiff must show: "(1) [she] is a qualified individual with a disability; (2) [she] was denied a reasonable accommodation that [she] needs in order to enjoy meaningful access to the benefits of public services; and (3) the program providing the benefit receives federal financial assistance (for the Rehabilitation Act

---

[5] The Supreme Court recently held that damages for emotional distress are not recoverable under the Rehabilitation Act, and therefore likely also under the ADA. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 142 S. Ct. 1562, 1576 (2022). Compensatory damages and injunctive relief remain available. *Id.* at 1571. Though this issue is not squarely before this Court, the Court notes that Plaintiff may no longer recover for emotional damages on these claims. *See* ECF 1 at ¶¶ 69, 78.

claim) or is a public entity (for the ADA claim)." *Csutoras v. Paradise High Sch.*, 12 F.4th 960, 968–69 (9th Cir. 2021) (internal quotation marks and citation omitted)).[6]

       To prevail on a claim for damages under Title II of the ADA or § 504 of the Rehabilitation Act, "plaintiffs must prove a *mens rea* of intentional discrimination . . . [and] that standard may be met by showing deliberate indifference, . . . not only by showing discriminatory animus." *A.G. v. Paradise Valley Unified Sch. Dist. No. 69*, 815 F.3d 1195, 1204 (9th Cir. 2016) (internal quotation marks omitted) (quoting *Mark H. v. Lemahieu,* 513 F.3d 922, 938 (9th Cir. 2008)). Deliberate indifference requires both "knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that the likelihood." *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001).[7] "When the plaintiff has alerted the public entity to [her] need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test." *Id*. The second element requires that "a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Id*.; *see also id*. at 1440 (denying summary judgment where defendants "had notice of [the plaintiff's] need for the accommodation involved and that they failed despite repeated requests to take the

---

     [6] There is no dispute that (1) that Plaintiff is a qualified individual with a disability, nor (3) that the program providing the benefit receives federal financial assistance or is a public entity. *See* ECF 33 at 13.

     [7] The deliberate indifference standards for § 1983 claims and ADA or Rehabilitation Act claims, while similar, are not identical. "For a § 1983 claim, the question is whether the defendant was deliberately indifferent *to a need for medical care*; for an ADA claim, the question is whether there was deliberate indifference *to the 'federally protected right' to participate in the programs and activities of the prison*." *Brown v. Woodford*, No. C05-2937 SIPR, 2007 WL 735768, at *3 (N.D. Cal. Mar. 7, 2007) (emphasis added).

necessary action"). Therefore, "[a] public entity may be liable for damages under Title II of the ADA or § 504 of the Rehabilitation Act 'if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons.'" *Updike v. Multnomah Cnty.*, 870 F.3d 939, 951 (9th Cir. 2017) (citation omitted) (emphasizing that "a public entity may not disregard the plight and distress of a disabled individual").

This Court "analyze[s] the . . . ADA and Rehabilitation Act claims together because the statutes provide identical remedies, procedures and rights." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1036 (9th Cir. 2018) (internal quotation marks and citation omitted); *see also* ECF 33 at 13; ECF 40 at 29 n.170.

### 2. Defendants State of Oregon, ODOC, and Peters[8]

Defendants argue that they are entitled to summary judgment on Plaintiff's ADA and Rehabilitation Act claims because: first, neither requires the provision of hearing aids as a reasonable accommodation; second, Plaintiff cannot show that she was excluded from any program or discriminated against due to her hearing disability; and third, Plaintiff cannot show deliberate indifference. ECF 33 at 13–15. Plaintiff contends that Defendants failed to provide Plaintiff with reasonable accommodations, either by providing hearing aids or otherwise, failed to investigate how to provide equal access to Plaintiff, and were deliberately indifferent to her

---

[8] Defendants argue that Defendant Peters should be dismissed because she is sued in her official capacity as Director ODOC. ECF 33 at 15. Plaintiff has not responded to this argument. "Although individual defendants may not be sued in their individual capacities under Title II of the ADA, they may be sued in their official capacities because suing an individual in his official capacity is treated the same as suing the entity itself." *Becker v. Oregon*, 170 F. Supp. 2d 1061, 1066 (D. Or. 2001). Because ODOC itself is a defendant in this case, the inclusion of Peters— who here is "treated the same as suing [ODOC]," *id.*—is superfluous. Accordingly, Peters is dismissed.

disability. ECF 40 at 29–35. Genuine issues of material fact preclude this Court from granting summary judgment on the ADA and Rehabilitation Act claims.

As to reasonable accommodations, neither party disputes that the ADA "does not require a public entity to provide . . . hearing aids." 28 C.F.R. § 35.135; *see also* ECF 33 at 14; ECF 40 at 29. Nevertheless, Defendants had an obligation to accommodate Plaintiff's hearing disability in a reasonable manner. *See* 28 C.F.R. §§ 35.130(b)(1)(vii), (b)(7)(i). Whether an accommodation is reasonable is a fact-specific, context-specific inquiry. *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041, 1048 (9th Cir. 1999); *Pierce v. Cnty. of Orange*, 526 F.3d 1190, 1216 (9th Cir. 2008) (discussing the reasonable accommodation analysis in the prison context). The record reflects that Plaintiff made numerous requests for accommodations, including asking for repairs to her hearing aids, an amplifier, and adjustments to her housing. *See generally* ECF 40 at 6–13 (summarizing written correspondence). Defendants do not argue or point to evidence in the record as to why the requested accommodations would be unreasonable or could not be accommodated; nor have they addressed why the accommodations provided by CCCF reasonably accommodated her disability. Viewing the evidence in the light most favorable to Plaintiff, as this Court must do on a motion for summary judgment, there is a genuine issue of fact as to whether Defendants reasonably accommodated her.

There are also genuine issues of material fact as to whether or not Plaintiff was excluded from any programs at CCCF. Defendants argue that "Plaintiff actually attended many programs during her incarceration," and therefore summary judgment is warranted. ECF 33 at 14. The record does reflect that Plaintiff attended programming and classes at CCCF. *See* ECF 35. However, Defendants read the statute too narrowly. The ADA prohibits the exclusion from "participation in . . . the *services, programs, or activities* of a public entity" on the basis of

disability. 42 U.S.C. § 12132; *see also* 29 U.S.C. § 794(a) (Rehabilitation Act). The record

reflects that her hearing impairment prevented her from participation in at least some of the

services and activities of CCCF. *See* ECF 43-2 at 7 (stating Plaintiff was unable to "hear [and]

comprehend instructions"); ECF 43-3 at 56 (noting Plaintiff reported that she missed "medline"

and lunch because she could not hear).  At oral argument, Plaintiff also highlighted that she had

been unable to avail herself of laundry services at CCCF because she was unable to hear when

collections would take place. ECF 49. Defendants have failed to address Plaintiff's assertions

about her inability to participate in their briefing or argument.

This Court also cannot find for Defendants on the issue of ADA or Rehabilitation Act

deliberate indifference on summary judgment. "[A] public entity can be liable for damages under

Title II and § 504 if it intentionally or with deliberate indifferences does not provide a reasonable

accommodation to a deaf or hearing-impaired person." *Updike*, 870 F.3d at 957. Defendants

argue that "ODOC officials were aware of [Plaintiff's] hearing loss and requests for better

hearing aids and related assistance, [but] it is not apparent that they were aware of a 'need' for

accommodation." ECF 33 at 15. However, the record reflects genuine disputes as to whether

Defendants were aware of a need for accommodation. The Ninth Circuit has explained that a

plaintiff satisfies the first element of the deliberate indifference test if "the plaintiff has alerted

the public entity to [her] need for accommodation," "or where the need for accommodation is

obvious." *Duvall*, 260 F.3d at 1139. Plaintiff points to evidence that she repeatedly requested

accommodations, including assistance repairing her hearing aids and changes in her housing

environment. Moreover, while some staff at CCCF reported that Plaintiff could communicate

effectively, including by reading lips, *see, e.g.*, ECF 43-1 at 301–02; ECF 43-2 at 7, the record

reflects that others reported that Plaintiff was unable to do so—particularly in a prison setting,

*see, e.g.*, ECF 43-3 at 189 (noting "[y]ou currently have to look directly at patient [and] yell" and "if no aid can't hear [without lip reading]"); *id*. at 58 (noting staff "ha[d] to write things [at] times"). Viewing the evidence in the light most favorable to Plaintiff, there is a genuine issue of fact regarding whether Defendants were aware of Plaintiff's need for accommodation.

There are also material facts in dispute relating to the second element of deliberate indifference—whether Defendants deliberately failed to act. Title II and § 504 "create a duty to gather sufficient information from the [disabled individual] and qualified experts as needed to determine what accommodations are necessary." *Duvall*, 260 F.3d at 1139; *see also Mooring v. Dep't of Corr. & Rehab.*, No. 2:14-cv-01471-MCE-KJN, 2015 WL 6163449, at *4 (E.D. Cal. Oct. 14, 2015). Defendants have not briefed or presented any evidence about what, if any, individualized investigations they undertook in relation to accommodating Plaintiff's disability, and the record suggests that Defendants disregarded or otherwise failed to investigate whether certain accommodations would be feasible. *See, e.g.*, ECF 43-2 at 3 (responding that "I [Arrington] don't influence housing or cell mates" in response to Plaintiff requesting a different housing environment due to being unable to hear); ECF 43-1 at 136 (summarily declining to provide Plaintiff with a new hearing-impaired card after hers got wet). Indeed, at oral argument, Defendant admitted that they had not undertaken any formal investigation into Plaintiff's need for accommodation or the propriety of her requested accommodation. "A denial of a request without investigation is sufficient to survive summary judgment on the question of deliberate indifference." *Updike*, 870 F.3d at 954.

To be clear, this Court is not holding that prisons must provide hearing aids to inmates with hearing impairments in order to comply with the ADA and Rehabilitation Act. *See* 28 C.F.R. § 35.135. Rather this Court denies summary judgment on these claims because Defendant

has failed to demonstrate, by pointing to facts in the record, that there are no genuine disputes regarding: 1) whether Plaintiff was excluded from programs, services, or activities at CCCF; 2) whether Defendants knew of Plaintiff's need for accommodations, and 3) whether Defendants deliberately failed to act.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment, ECF 33, is GRANTED IN PART and DENIED IN PART. Summary judgment is granted as to Plaintiff's § 1983 claims. Summary judgment is denied as to Plaintiff's ADA and Rehabilitation Act claims. Finally, Defendants Peters is DISMISSED from this action.

**IT IS SO ORDERED**.

DATED this 19th day of July, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge